Opinion issued November 30, 2006 










In The

Court of Appeals

For The

First District of Texas






NO. 01-04-01205-CR






QUANELL X ABDUL FARRAKHAN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 338th District Court

Harris County, Texas

Trial Court Cause No. 990783






O P I N I O N


 A jury convicted appellant, Quanell X Abdul Farrakhan, of the misdemeanor
offense of "fleeing or attempting to elude a police officer." See Tex. Transp. Code
Ann. § 545.421 (Vernon 1999). The trial court assessed punishment at 180 days in
jail, suspended for 180 days of community supervision, and a $300 fine. We
determine (1) whether the evidence is legally sufficient to support the conviction; (2)
whether appellant's due process rights were violated by the State's alleged use of
perjured testimony before the grand jury; and (3) whether the trial court erred in
charging the jury on the lesser-included offense of which appellant was convicted. 
We reverse the judgment and remand the cause with instructions for the trial court to
dismiss the indictment.

I. Background


 On June 9, 2002, Derrick Forney shot a Houston Police Department ("HPD")
officer. HPD searched for Forney, but to no avail. Detective Abbondandolo, of
HPD's homicide division, was the lead detective on the case.

 The night of June 10, 2004, appellant, a community activist who had assisted
HPD with suspects' peaceful surrender at least 15 times in the past, contacted Jeff
McShan, a local television reporter, and HPD to advise that Forney had asked
appellant to assist in Forney's surrender. To accomplish Forney's surrender,
appellant asked for and was granted permission to deliver Forney to HPD's Travis
Street headquarters in downtown Houston that evening. The arranged procedure was
consistent with how appellant and the HPD chief's office had handled surrenders
facilitated by appellant in the past. This procedure had been put in place by the prior
chief of police and had continued afterwards, although it had never been written
down. 

 Forney later became "spooked" and would not allow appellant to deliver him
to HPD that evening, but appellant advised HPD that he would try again the next
morning. The next morning, McShan contacted Detective Abbondandolo to advise
that HPD should send officers to the intersection of Bissonnet Street and Beltway 8
in Houston. Detective Abbondandolo drove to the intersection in an unmarked
vehicle, with eight officers in four unmarked police vehicles joining him. When the
detectives arrived, they saw appellant's black Hummer. McShan then called
Detective Abbondandolo to advise that appellant and Forney were in the Hummer and
that appellant would drive Forney to the Travis headquarters. McShan believed that
the June 10 "deal" between appellant and HPD for appellant to deliver Forney to the
Travis headquarters was still in place that morning, and he urged Detective
Abbondandolo to honor it. Detective Abbondandolo decided that he and the officers
who had accompanied him would "just follow behind" to ensure that appellant drove
Forney to the Travis headquarters. 

 Appellant first drove along routes that were consistent with a downtown
destination. However, the officers "became concerned" when appellant began taking
routes that appeared to lead away from the downtown area. Then, when appellant
headed away from downtown and into a residential neighborhood in which
acquaintances of Forney's were known to reside, the detective became "very"
concerned and felt that the officers "no longer had control of what was going on."
Accordingly, Detective Abbondandolo "got on the radio and asked for patrol units to
start coming toward our location" and also asked the officers who had accompanied
him "to start coming in our direction to assist in this arrest." The detective did so
because he feared that Forney had either changed his mind or that he was forcing
appellant to drive against appellant's will.

 Right then, appellant made an abrupt u-turn over a concrete median and headed
in the opposite direction, going west toward the route to the Travis headquarters. 
Detective Abbondandolo turned around and began following appellant. By
coincidence, and not in response to Detective Abbondandolo's call for the assistance
of marked patrol units, HPD Officer Keith Roi (1) was driving eastward and came into
view of Detective Abbondandolo's westward-bound car. (2) Officer Roi saw Detective
Abbondandolo's partner signal him to stop appellant's vehicle. Officer Roi complied
by turning around and following appellant, turning on his lights, and activating his
siren "several times." 

 Appellant did not stop, although there were several places in which he could
have. Instead, appellant continued driving in the general direction of downtown,
which Detective Abbondandolo interpreted to mean that appellant was again heading
to the Travis headquarters, and eventually entered the freeway. Appellant did not
exceed the speed limit or drive erratically, and he had the flashers on for at least some
of the time. (3) Appellant also did nothing "to avoid [Officer Roi's] following him." 
However, appellant accelerated when Officer Roi turned behind him onto the freeway
access road, and appellant committed two traffic violations while Officer Roi was
following him. (4)

 While Officer Roi was following appellant, appellant tried to call HPD's police
chief. The chief was out of the office, so appellant's call was routed to HPD
Executive Assistant Chief Charles McClelland, the acting chief. Appellant, who was
very excited, told McClelland that he was trying to bring in Forney, but that "trigger
happy killer cops" were "all over him" and were "going to create an incident." 
Appellant also told McClelland that "this was not part of the deal." Although he was
aware that appellant was to bring Forney to the Travis headquarters that morning,
McClelland did not know what was happening on the ground except for what
appellant told him--which did not include any mention that appellant had u-turned
over a median, had twice violated traffic laws while Officer Roi was following him,
and had recently driven away from downtown into an area in which Forney's friends
were believed to live. (5) McClelland also denied knowing of a plan or protocol
concerning how the suspect was to be brought in, what route he would take, and in
what vehicle he would be transported. 

 McClelland feared that "something [was] going terribly wrong" and was
concerned that Forney might instigate a stand-off, create a hostage situation, or cause
someone to be harmed. Accordingly, although he did not tell appellant to disregard
the police at the scene, McClelland told appellant that McClelland "would find out
what officers were following him and give them instructions to allow him to
peacefully surrender at the [Travis headquarters]," as long as appellant was en route
to the headquarters. Another officer testified that McClelland told him that
McClelland had instructed appellant to slow down and "to keep coming." 
McClelland never expressly told appellant to stop or to pull over, although he could
hear a continuous siren in the background during appellant's call. 

 McClelland quickly began trying to learn who the officers on the ground were,
but those officers stopped appellant before McClelland could contact them. Forney
was arrested without incident. Appellant was also eventually arrested for evading
arrest or detention.

 Appellant was indicted for the state felony offense of evading detention by use
of a motor vehicle. See Tex. Pen. Code Ann. § 38.04(a), (b)(1) (Vernon 2003). 
Over appellant's objection, the trial court also charged the jury on the lesser-included,
misdemeanor offense of fleeing or attempting to elude a police officer. See Tex.
Transp. Code Ann. § 545.421(a). At appellant's request, the court charged the jury
on the defense of mistake of fact--specifically, that appellant reasonably believed
that he had permission to proceed despite Officer Roi's signals to stop. The jury
implicitly acquitted appellant of the greater offense of evading detention and
convicted him of the lesser offense of fleeing or attempting to elude a police officer.

II. Sufficiency of the Evidence


 In his first issue, appellant argues that the evidence was legally insufficient to
support his conviction for the offense of fleeing or attempting to elude a police
officer. In reviewing a legal-sufficiency challenge, we view the evidence in the light
most favorable to the verdict to determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt. King v.
State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

A. The Law

 A person commits the offense of fleeing or attempting to elude a police officer
if he "operates a motor vehicle and wilfully fails or refuses to bring the vehicle to a
stop or flees, or attempts to elude, a pursuing police vehicle when given a visual or
audible signal to bring the vehicle to a stop." Tex. Transp. Code Ann. § 545.421(a). 
The offense of fleeing or attempting to elude a police officer is worded in the
disjunctive: one commits the offense if one (1) "wilfully fails or refuses to bring the
vehicle to a stop . . . when given a visual or audible signal to bring the vehicle to a
stop" or if one (2) "wilfully . . . flees, or attempts to elude, a pursuing police vehicle
when given a visual or audible signal to bring the vehicle to a stop." Id. The jury
was charged to find appellant guilty if he committed the offense by either of these two
means.

 The jury was also charged on, and implicitly rejected, the defense of mistake
of fact, which is statutorily defined as follows:


 It is a defense to prosecution that the actor through mistake
formed a reasonable belief about a matter of fact if his mistaken
belief negated the kind of culpability required for commission of
the offense.
 Although an actor's mistake of fact may constitute a defense to
the offense charged, he may nevertheless be convicted of any
lesser included offense of which he would be guilty if the fact
were as he believed.



Tex. Pen. Code Ann. § 8.02 (Vernon 2003). The jury was charged that this defense
could negate the culpable mental state of either offense.

B. Discussion

 Appellant argues that the evidence is legally insufficient to support the
following elements of the offense: (1) wilfulness and (2) his failure or refusal to stop
the vehicle or his flight or attempt to elude the officer. The crux of appellant's
argument is that he could not have been eluding or fleeing, or have acted wilfully in
any way, if the officers involved knew from the beginning that he was proceeding to
the downtown Travis headquarters, as he had done several times in the past.

 Appellant's argument fails to take into account the evidence, viewed in the
required light, that appellant deviated from a route that would have taken him
downtown and, in fact, headed away from downtown into an area believed to house
Forney's acquaintances before any officer attempted to stop him. When appellant
deviated, Detective Abbondandolo became very concerned, felt that the officers no
longer had control of the situation, and even feared that Forney might have taken
appellant hostage. Once appellant deviated, the officers no longer knew, at least until
appellant changed his course, that appellant was heading to the Travis headquarters. 
And even when appellant was again heading downtown, he drove over a median to
do so and committed two traffic offenses--each of which would have independently
allowed appellant to be stopped--while being pursued by a marked police car.

 Furthermore, viewed in the appropriate light, McClelland's testimony was that
he did not tell appellant to disobey the officers at the scene and that he said merely
that he would try to reach the officers to instruct them to allow appellant to proceed
to headquarters. McClelland also testified that appellant had failed to relate to him
information important to McClelland's decision on how to handle the situation,
including that appellant had deviated from a direct route and had headed into a
neighborhood in which Forney's acquaintances were believed to reside, had made an
abrupt u-turn over a median to head in the opposite direction from the officers who
had been following him, and had committed two traffic offenses after that. Once he
knew all the facts, McClellan agreed that the officers on the scene had acted
appropriately.

 It was undisputed that appellant failed to stop his Hummer while being pursued
by a marked police vehicle after having been signaled to stop. Given the context set
out above, we hold that a rational jury could have concluded beyond a reasonable
doubt that appellant wilfully failed to stop after having been signaled to do so and
that any belief by appellant that he had McClellan's permission to proceed would not
have been reasonable because (1) appellant had deviated from a route to downtown
and instead headed toward an area in which Forney's acquaintances were believed to
reside, (2) he had committed two independent traffic offenses, and (3) he had not
divulged all relevant facts to McClellan so that McClellan could make an informed
decision as to whether to allow appellant to proceed. 

 We overrule appellant's first issue.

III. Due Process


 In his fourth issue, appellant asks us to determine that "[his] right to due
process was abrogated by the State's use of perjured testimony before the grand jury
that returned the indictment." Specifically, appellant asserts that McClelland perjured
himself, with the State's knowledge, at the grand-jury proceedings by testifying in
supposed contradiction of testimony that he had given on two prior occasions: in an
affidavit and at an examining trial. 

 Appellant moved pretrial to dismiss the indictment because of the State's
alleged suborning of perjury at the grand-jury proceedings. The trial court denied the
motion. Appellant moved for new trial on the same ground. The trial court denied
that motion, as well. We review the denial of a motion to dismiss an indictment under
a hybrid standard of review: determinations of historical fact are reviewed for an
abuse of discretion, while the application of those facts to the law and questions of
law are reviewed de novo. See State v. Moff, 154 S.W.3d 599, 601 (Tex. Crim. App.
2004) (importing standard from Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App.
1997), into review of ruling on motion to quash indictment, although employing only
de novo standard of review in that case because determination did not depend on
witness credibility or demeanor). We review the denial of a motion for new trial for
abuse of discretion. See Holden v. State, 202 S.W.3d 761, 763 (Tex. Crim. App.
2006).

 "Perjury is committed by making a deliberate and willful false statement under
oath." In re Davila, 631 S.W.2d 723, 725 (Tex. 1982); see Tex. Pen. Code Ann. §
37.02(a)(1) (Vernon 2003) ("A person commits [the offense of perjury] if, with intent
to deceive and with knowledge of the statement's meaning: he makes a false
statement under oath . . . ."). "The branding of any person with a charge of perjury
should not be taken lightly." In re Davila, 631 S.W.2d at 725. 

 Appellant asserts that McClelland perjured himself, with the State's
knowledge, at the grand-jury proceedings by testifying that (1) he never told appellant
that McClelland would have the officers following him "escort [appellant]" to the
Travis headquarters; (2) McClelland had "no authority to give escort of
convenience"; and (3) McClelland had "no authority to prohibit the officers from
arresting [appellant] for any violation of the law that he may or may not have
committed, but [McClelland's] authority lies over their discretion." Appellant also
complains of the following testimony:

 Grand Juror: [T]heir defense has given us something to read here. 
 It says, "Assistant Chief McClelland told Minister
Quannel X that he would get the officers to assist
him to get to [the Travis headquarters]." You're
saying that simply is not true.


 A: No, that's their words . . . and not mine.

 

 Appellant argues that the cited grand-jury testimony was contradicted by
testimony that McClelland gave two other times: in an affidavit and at an examining
trial. As for the former, appellant notes that, in the affidavit, McClelland averred that
he had told appellant that McClelland would "find out what officers were following
him and give them instructions to allow him to peacefully surrender," among related
things. As for the latter, appellant relies on the following examining-trial testimony
of McClelland:

 Q: Would it be inappropriate for you to contact officers to tell them
to assist someone to safely come in, to escort them?


 A: Would it be inappropriate?


 Q: Yes sir.


 A: No. That is within my authority to have control, of, you know, of
officers['] discretion in that manner.


 * * *

 Q: Do you recall ever telling [appellant] that officers would assist
him in coming in or something that amounted to that, and not use
the word "escort"?


 A: Yes, because escort has a different connotation in the [HPD].


 Q: But did you make him aware that he would, he would have
assistance even coming in?


 A: That's what I was going to try to do. 

 McClellan's complained-of statements are not so contradictory or inconsistent
as to amount to perjury as a matter of law. For example, McClelland's grand-jury
testimony that he did not tell appellant that he would be "escorted" does not
necessarily contradict his other cited testimony--in which he testified that he told
appellant that he would instruct the officers to allow appellant to come downtown
peacefully or with assistance--because McClelland also testified that "escort" had a
particular meaning in HPD parlance. Likewise, in McClelland's examining-trial
testimony that he had authority to "control . . . officers['] discretion in that manner
[sic]," the pronoun "that" could have referred either to the verb "escort" or to the verb
"assist," both of which had been used in the question. (Emphasis added.) Only the
former antecedent might conceivably have been inconsistent with McClelland's
grand-jury testimony that he had no authority to order "escort[s] of convenience"; the
latter antecedent would not have been inconsistent. Furthermore, when asked by a
grand juror whether appellant's claim that McClelland had pledged to "get the
officers to assist [appellant] to get to [the Travis headquarters]" was true, McClelland
did not unequivocally deny the statement, but instead replied, "No, that's their words
. . . and not mine." In any event, in his affidavit and at the examining trial,
McClelland said both that he intended to get appellant "assistance [in] coming in"
and that he "would . . . give [the officers at the scene] instructions to allow appellant
to peacefully surrender." (Emphasis added.) Accordingly, McClelland's rejection
before the grand jury of appellant's use of the term "assist" is consistent with at least
some of his other testimony.

 Given these circumstances, we decline to hold that the trial court erred if it
implicitly concluded that McClelland did not commit perjury. If the court concluded
that no perjury had occurred, then it also did not err in implicitly concluding that the
State had not suborned perjury. Accordingly, we hold that the trial court did not err
in denying appellant's motions to dismiss and his motion for new trial.

 We overrule appellant's fourth issue.

IV. Lesser-Included Offense

 In his third issue, appellant contends that the trial court erred when it charged
the jury, at the State's request and over his objection, on the lesser-included offense
of fleeing or attempting to elude a police officer.


A. Comparison of the Offenses

 Pursuant to the allegations here, a person commits the state jail felony of
evading arrest or detention when he "intentionally flees from a person he knows is a
peace officer attempting lawfully to arrest or detain him" and "the actor uses a vehicle
while the actor is in flight" without having previously been convicted of the offense. 
Tex. Pen. Code Ann. § 38.04(a), (b)(1). A person commits the Class B misdemeanor
of fleeing or attempting to elude a police officer when "the person operates a motor
vehicle and wilfully fails or refuses to bring the vehicle to a stop or flees, or attempts
to elude, a pursuing police vehicle when given a visual or audible signal to bring the
vehicle to a stop." Tex. Transp. Code Ann. § 545.421(a). The officer's signal may
be by hand, voice, emergency light, or siren, and the signaling officer must be
uniformed, prominently displaying his badge, and driving a vehicle that is
appropriately marked as an official police vehicle. Id. § 545.421(b). The elements
of the two offenses are compared in the chart below:


Alleged Lesser Offense:


Fleeing or Attempting to
Elude a Police Officer

(§ 545.421(a), (b))

Alleged Greater Offense:


Evading Arrest or Detention

(§ 38.04(a), (b)(1))
1. defendant operates a
motor vehicle
1. defendant uses a motor
vehicle
2. defendant has a wilful
state of mind
2. defendant has an
intentional state of mind
3. defendant fails or refuses
to stop the vehicle

or


 defendant flees or
attempts to elude
3. defendant flees
4. defendant does #3 while
a police vehicle is
pursing him



--


--

4. defendant knows that the
person from whom he flees
is a peace officer

--

5. defendant knows that that
officer is attempting
lawfully to arrest or to
detain him
5. defendant does #3 after
having been given visual
or audible signal to stop
vehicle
--


6. officer must be
uniformed and be
prominently displaying
badge 

--

7. officer's vehicle must be
appropriately marked as
an official police vehicle 
--



B. Walker v. State


 Our sister court of appeals has held, under the first prong of the lesser-included-offense test, that the offense of fleeing or attempting to elude a police
officer is a lesser-included offense of evading arrest or detention by use of a motor
vehicle. See Walker v. State, 95 S.W.3d 516, 519 (Tex. App.--Fort Worth 2002, pet.
ref'd). (6) In Walker, the court applied section one of article 37.09 (7) and reasoned that
"[i]n proving that [the] appellant evaded arrest" under an indictment alleging flight
from a peace officer whom the appellant knew was attempting to arrest or to detain
him lawfully, the State also "established that [the] appellant failed to stop his vehicle"
after having been signaled to do so. See id., 95 S.W.3d at 519. The Walker court thus
equated the intentional-flight element of evading arrest or detention with the failure-to-stop element of fleeing or attempting to elude a police officer. After identifying
the controlling issue as "whether proof of the charged offense, in this case, actually
included proof of the lesser included offense as defined in article 37.09," the Walker
court reasoned that "[i]n proving that appellant evaded arrest, the State established
that appellant failed to stop his vehicle after being given an audible signal to do so
by an officer in uniform, displaying his badge, and driving a properly marked police
car," the elements of fleeing or attempting to elude a police officer. Id. at 518-19. 
The Walker court concluded:

 Thus, the only difference between the two statutes as applied to the facts
of this case is the element of evading arrest that requires appellant's
knowledge that the officer was attempting to lawfully arrest or detain
him. Accordingly, because the elements of fleeing or attempting to
elude a peace officer are included within the proof necessary to establish
evading arrest, fleeing or attempting to elude a peace officer is a lesser
included offense of evading arrest. 


Id. at 519 (emphasis added).

 Appellant argues that Walker is incorrectly decided for two reasons. First, he
argues that the Walker court never expressly considered that the mens rea required
for fleeing or attempting to elude a police officer (wilful action) is greater than that
required for evading arrest or detention (intentional action). See Tex. Code Crim.
Proc. Ann. art. 37.09, §§ 1, 3 (Vernon 2006) (defining lesser-included offense as,
among other things, being established by proof of same or fewer than all facts needed
to establish charged offense or differing from charged offense only by less culpable
mental state); compare Tex. Transp. Code Ann. § 545.421(a) (requiring wilful
failure or refusal to stop vehicle or wilful flight or attempt to elude) with Tex. Pen.
Code Ann. § 38.04(a) (requiring intentional flight). Second, appellant argues that
"the offense of fleeing [or attempting to elude a police officer] requires proof of more
facts which are different . . . [from those required] to prove the offense of evading
detention." (8) We need discuss only appellant's second argument: that the offense of
fleeing or attempting to elude a police officer requires proof of more facts than are
required to prove the charged offense.

C. Discussion

 "The starting point in any analysis of lesser included offenses is [Code of
Criminal Procedure] Article 37.09." Jacob v. State, 892 S.W.2d 905, 907 (Tex. Crim.
App. 1995). Article 37.09 provides:

 An offense is a lesser included offense if:


 (1) it is established by proof of the same or less than all the facts
required to establish the commission of the offense charged;


 (2) it differs from the offense charged only in the respect that a
less serious injury or risk of injury to the same person, property, or
public interest suffices to establish its commission;


 (3) it differs from the offense charged only in the respect that a
less culpable mental state suffices to establish its commission; or


 (4) it consists of an attempt to commit the offense charged or an
otherwise included offense.


Tex. Code Crim. Proc. Ann. art. 37.09. We conduct the analysis of whether one
offense is a lesser offense of another on a case-by-case basis. See Jacob, 892 S.W.2d
at 907; Flores v. State, 888 S.W.2d 187, 192 (Tex. App.--Houston [1st Dist.] 1994,
pet. ref'd).

 We begin, as did the Walker court, with section one of article 37.09. See
Walker, 95 S.W.3d at 519 (applying section one of article 37.09 in reaching holding
that fleeing or attempting to elude a police officer is lesser-included offense of
evading arrest or detention). In determining whether a charge on a lesser-included
offense is required under section one of article 37.09, we apply a two-step analysis. 
Feldman v. State, 71 S.W.3d 738, 750 (Tex. Crim. App. 2002); Rousseau v. State, 855
S.W.2d 666, 672 (Tex. Crim. App. 1993). Under the first part of this analysis, we
consider whether the lesser-included offense is included within the proof necessary
to establish the charged offense. Tex. Code Crim. Proc. Ann. art. 37.09, § 1;
Rousseau, 855 S.W.2d at 672. Under the second step, we determine whether the
record includes some evidence that would permit a jury rationally to find that, if the
defendant is guilty, he is guilty only of the lesser-included offense. Feldman, 71
S.W.3d at 750. This two-part analysis applies whether the defendant or the State
requests the lesser-included-offense charge. See Arevalo v. State, 943 S.W.2d 887,
890 (Tex. Crim. App. 1997).

 Under the first step of the Rousseau lesser-included-offense test for section one
of article 37.09 (considering whether the lesser-included offense is included within
the proof necessary to establish the charged offense), a lesser-included offense is
determined by examining (1) the elements of the offense charged; (2) the statutory
elements of the offense claimed to be the lesser-included offense; and (3) the proof
presented at trial to show the elements of the charged offense. Hayward v. State, 158
S.W.3d 476, 478 (Tex. Crim. App. 2005); Jacob, 892 S.W.2d at 907-08; see Tex.
Code Crim. Proc. Ann. art. 37.09, § 1. We explain these three prongs of what we
call the "Hayward-Jacob test" below.

 The first two prongs of the Hayward-Jacob test, which in essence require the
comparison of the two offenses' elements, exist because article 37.09, section one's
"proof of the same or less than all the facts required to establish the . . . offense
charged" language generally refers to the facts required to prove the elements of the
greater offense, as modified by the charging instrument. See Hayward, 158 S.W.3d
at 478 ("When we review a trial court's decision to deny the request, we consider the
charged offense, the statutory elements of the lesser offense, and the evidence
actually presented at trial. More specifically, we examine the statutory elements of
the charged offense as modified by the indictment.") (footnotes omitted); Jacob, 892
S.W.2d at 908 (holding that "'[f]acts required'" language of article 37.09, section one
"means the evidence legally required to prove the elements" of charged offense). 
That is, if an offense's elements are proved by the same or less evidence than that
required to prove the elements as they are alleged for the charged offense, then the
former may be a lesser-included offense of the latter. (9) See Hayward, 158 S.W.3d at
478; Jacob, 892 S.W.2d at 908; see also Hernandez v. State, 819 S.W.2d 806, 813
(Tex. Crim. App. 1991) ("A charge on a lesser included offense must be given if the
lesser included offense is necessarily included within the proof required to establish
the offense charged . . . ."). The elements of the lesser offense need be only
functional equivalents of the elements of the charged offense. Hayward, 158 S.W.3d
at 478; Jacob, 892 S.W.2d at 908; see also Bell v. State, 693 S.W.2d 434, 438-39
(Tex. Crim. App. 1985) (holding that reckless conduct was lesser-included offense
of aggravated assault by threatening another with imminent bodily injury by use of
deadly weapon because "[t]he danger of serious bodily injury [in the lesser offense]
is necessarily established when a deadly weapon is used in the commission of an
offense [as required for the greater offense].") (emphasis omitted). Thus, under the
first two prongs of the Hayward-Jacob test, courts are to compare the elements of the
offenses (as the one offense's elements are modified by the charging instrument) for
functional equivalency. 

 Only after such a comparison does the court proceed to the third prong of the
Hayward-Jacob test: an examination of the evidence that the State presented to prove
the charged offense in order to determine if that proof also shows the lesser-included
offense. See Hayward, 158 S.W.3d at 478-79; Jacob, 892 S.W.2d at 907-08. As
for this third prong, the question is not whether the charged offense is capable of
being established on some theory that does not show the lesser-included offense, but,
rather, whether the State, in proving the charged offense, also presents evidence
showing the lesser offense. Bartholomew v. State, 871 S.W.2d 210, 212 (Tex. Crim.
App. 1994) (quoting Broussard v. State, 642 S.W.2d 171, 173 (Tex. Crim. App.
1982)) (holding that trial court erred in denying lesser-offense instructions on
speeding and racing when some evidence showed that defendant was speeding and
racing and when information charged reckless driving by "exceeding the posted speed
limit and engaging in a race").

 Section one of article 37.09, like all of that article's sections, is constitutional
precisely because it is stated with reference to the elements (as modified by the
charging instrument) of the offense charged and "does not enlarge upon the offense
charged, but . . . restricts . . . as compared to the offense charged." Jacob, 892 S.W.2d
at 907; cf. Mello v. State, 806 S.W.2d 875, 877 (Tex. App.--Eastland 1991, pet. ref'd)
("The elements of lesser included offenses are considered to have been alleged within
the elements in the indictment alleging the greater offense."). As the Court of
Criminal Appeals has explained:

 "Facts required" means the evidence legally required to prove the
elements. For instance, the State may prove more than is legally
required by also proving a different offense than the charged offense just
because of the facts in the particular case. The constitutional validity of
Article 37.09 rests in part on its reference to the offense charged and to
the restricted or reduced culpability of the lesser included offense as
compared to the offense charged. Otherwise a defendant could be
convicted of offenses not subsumed in the charged offense but shown by
the evidence presented. That is why a lesser included offense is defined
with reference to the facts "required" to establish the charged offense
rather than to facts presented at trial.


Jacob, 892 S.W.2d at 908 (citation omitted). 

 With these principles in mind, we examine the following elements of the
allegedly lesser offense of fleeing or attempting to evade a police officer:

 Existence of a "pursuing police vehicle" (fourth element in
chart above)


 Existence of officer in uniform and prominently displaying
badge (sixth element in chart above)


 Officer's operation of vehicle "marked as an official police
vehicle" (seventh element in chart above)


 Giving of a "visual or audible signal" (fifth element in
chart above)


 The offense of fleeing or attempting to elude a police officer requires that the
defendant be signaled visually (by hand or emergency light) or audibly (by voice or
siren) to stop and that he be pursued by a marked police vehicle that is driven by a
uniformed officer with a prominently displayed badge. See Tex. Transp. Code Ann.
§ 545.421(a), (b). The offense of evading arrest or detention does not expressly
contain these elements. See Tex. Pen. Code Ann. § 38.04(a). The Walker court
nonetheless concluded that these four elements did not prevent the offense of fleeing
or attempting to elude a police officer from being a lesser-included offense of evading
arrest or detention:

 [T]he indictment charged that appellant did "intentionally flee from
Jason Couch, a person the Defendant knew to be a police officer
lawfully attempting to arrest or detain the Defendant, and the Defendant
used a vehicle in said flight." In proving that appellant evaded arrest,
the State established that appellant failed to stop his vehicle after being
given an audible signal to do so by an officer in uniform, displaying his
badge, and driving a properly marked police car.


Walker, 95 S.W.3d at 519 (emphasis added). Given this reasoning, it is obvious that
the State's evidence actually showed that the officer in Walker was uniformed and
driving a marked vehicle when he tried to stop the defendant. 

 Here, the indictment alleged:

 [Appellant] . . . heretofore on or about JUNE 11, 2004, did then and
there unlawfully, intentionally flee from [Officer Roi], hereafter styled
the Complainant, a peace officer employed by HOUSTON POLICE
DEPARTMENT, lawfully attempting to DETAIN [appellant], and
[appellant] knew that the Complainant was a peace officer attempting to
DETAIN [appellant], and [appellant] used a motor vehicle while he was
in flight.


The State's evidence, when viewed in the required light, implied or showed that
Officer Roi was uniformed, had on his badge, and was pursuing appellant in a marked
vehicle when he signaled appellant to stop with his lights and siren. This situation
is indistinguishable from that in Walker.

 We nonetheless respectfully decline to follow the Walker court on this point. 
That the State could and did present evidence of these four additional facts in proving
appellant's guilt of the charged offense does not mean that the State was required to
do so. It is only the latter inquiry that determines whether an offense constitutes a
lesser-included offense of the charged offense. See, e.g., Jacob, at 892 S.W.2d 908. 
That is, only if the State was required to prove these four matters--that Officer Roi
was uniformed and that his badge was prominently displayed, that he drove a marked
vehicle, that he pursued appellant with that vehicle, and that appellant was signaled
audibly or visually (in one of the four mentioned ways) to stop--in order to prove the
charged offense would the State have been entitled to a lesser charge on fleeing or
evading a police officer. 

 We conclude that the State was not required to prove at least three of these
additional facts to prove the charged offense and, therefore, that the uncharged
offense's elements requiring proof of these three facts were neither the functional
equivalents of the elements of the charged offense nor were they included within the
charged offense's elements. (10) For example, as charged here, the offense of evading
detention required that the State prove only that appellant, by using a motor vehicle,
intentionally fled from Officer Roi when appellant knew that Officer Roi was a peace
officer attempting to detain him lawfully. See Tex. Pen. Code Ann. § 38.04(a). That
offense did not require the State to prove, for example, that Officer Roi was in a
vehicle of any kind (as unusual as that scenario might be when the suspect is in a
vehicle); (11) that the officer was uniformed and prominently displaying his badge; (12) or
that, if the officer was using a vehicle, that vehicle was appropriately marked as an
official police vehicle. (13) The fact that the State did prove these things in the process
of proving the statutorily required elements of evading detention is irrelevant. See
Jacob, 892 S.W.2d at 908. We respectfully disagree with the Walker court's
conclusion to the contrary because its conclusion appears to have rested on what
evidence the State actually presented, rather than on what evidence the State was
required to present, to prove the charged offense. See Walker, 95 S.W.3d at 519
("Here, the indictment charged that appellant did 'intentionally flee from Jason
Couch, a person the Defendant knew to be a police officer lawfully attempting to
arrest or detain the Defendant, and the Defendant used a vehicle in said flight.' In
proving that appellant evaded arrest, the State established that appellant failed to
stop his vehicle after being given an audible signal to do so by an officer in uniform,
displaying his badge, and driving a properly marked police car.") (emphasis added).

D. The State's Authority

 At oral argument, the State cited to Cunningham v. State, in which the Court
of Criminal Appeals held that indecency with a child was a lesser-included offense
of aggravated sexual assault of a child in that case, notwithstanding the fact that the
former offense contained the element that the defendant act with specific intent to
arouse or to gratify someone's sexual desire, while the charged offense did not. Id.,
726 S.W.2d 151, 155 (Tex. Crim. App. 1987); compare Tex. Pen. Code Ann.
§ 22.021(a)(1)(B)(ii), (2)(A)(iii) (Vernon Supp. 2006) (aggravated sexual assault; not
requiring intent to arouse or to gratify sexual desire) with id. § 21.11(a)(1), (c)
(Vernon 2003) (indecency with child; requiring intent to arouse or to gratify sexual
desire of any person). The State argues that Cunningham supports a holding that the
lesser-included offense here was properly charged because that authority allows,
under the proper evidence presented, an offense to be a lesser-included offense even
if it has an additional element that is not the functional equivalent of any element of
the greater offense.

 We disagree that Cunningham controls, although we agree that that court held
what the State contends. It is true that, in reaching its conclusion, the Cunningham
court appears to have reasoned, in effect, that the lesser offense's element of acting
with specific intent to arouse or to gratify the sexual desire of any person was
necessarily inherent in the greater offense's element (as alleged in that case) of
knowingly causing the penetration of the child's mouth by the defendant's sexual
organ, which might distinguish that case from this. However, the Cunningham court
also reasoned as follows:

 While the 1983 changes may indicate a legislative preference that the
thrust of sexual assault of a child be regarded as more assaultive in
nature than sexual abuse of a child, we must not confuse statutory
elements in the definition of an offense with evidentiary facts that prove
it. That the Legislature altered the nature of the offense does not rule
out the fact that an act of causing penetration of the mouth of a child by
the penis of another will be accompanied with specific intent to arouse
or gratify sexual desire of the actor. The issue is "whether the State's
case as presented to prove the offense charged included proof of [a
lesser included offense]," not "whether the primary offense is capable
of proof on some theory that would not show [a lesser included
offense]."


Cunningham, 726 S.W.2d at 154 (citations omitted; emphasis added). That reasoning
is broader than would allow for the potential distinction noted above, and that
reasoning appears to us to conflict with later Court of Criminal Appeals's
pronouncements in cases like Jacob. In Jacob, the court held that focusing on the
evidence that the State presented to prove the charged offense "negates the language
of Article 37.09(1) by changing 'facts required' into 'facts presented.'" Jacob , 892
S.W.2d at 908. The Jacob court went on to hold that "facts required" means "the
evidence legally required to prove the elements" of the offense as charged. Id. The
Jacob court then instructed that "first a statutory analysis and then a factual analysis
must be done in light of the charged offense," including examining the claimed lesser
offense's elements to see if they are functionally the same as or less than those
required to prove the offense charged. Id. (emphasis added). The analysis adopted
by the Jacob court thus begins with a comparison of the elements of the two offenses
(taking into account how the greater offense's elements have been modified by the
charging instrument) for functional equivalency before examining the evidence
presented to prove the State's case. The above-quoted reasoning of Cunningham thus
violates the spirit, if not the letter, of the rule exemplified by Jacob.

 The Court of Criminal Appeals has at times followed the logic of Cunningham. 
See Goodin v. State, 750 S.W.2d 789, 790 (Tex. Crim. App. 1988) (in reviewing court
of appeals's judgment, in case in which court of appeals had held that conspiracy was
not lesser-included offense of murder because former required showing of agreement,
while latter did not, citing Cunningham and stating, "We do not, however, agree with
the Court of Appeals' language indicating that a determination of whether an
instruction on a lesser included offense should be given should be based on whether
the lesser included offense has elements not required for the primary offense."); see
also Campbell v. State, 571 S.W.2d 161, 162 (Tex. Crim. App. 1978) (in concluding
that theft was lesser-included offense of aggravated robbery in that case, stating, "The
theft was without question proven within the facts relied on by the State to make its
case of aggravated robbery"); (14) cf. Ochoa v. State, 982 S.W.2d 904, 908 (Tex. Crim.
App. 1998) (in double-jeopardy case, analogizing to Cunningham and explaining it
as follows: "This Court determined the Legislature did not intend that the 'intent to
arouse and gratify' requirement [of indecency with a child] be excluded from proof
of the elements of aggravated sexual assault," which did not expressly include that
element). Nonetheless, judges on the Court of Criminal Appeals have also questioned
Cunningham's reasoning. Cf. Ochoa, 982 S.W.2d at 909 (Keller, J., joined by
Mansfield, J., concurring in judgment) (in double-jeopardy case, criticizing majority's
reliance on Cunningham because it did not concern prosecution of two offenses and
because "Cunningham's conclusion that an offense was lesser-included based upon
proof at trial appears to be contrary to precedent from the Supreme Court and this
Court in that respect.") (emphasis in original). And, even more recently, the Court
of Criminal Appeals has followed Jacob's test. See Hayward, 158 S.W.3d at 479-80
(following and explaining Jacob's analysis); see also Irving v. State, 176 S.W.3d 842,
845-46 (Tex. Crim. App. 2005) (citing Jacob); Campbell v. State, 149 S.W.3d 149,
153 (Tex. Crim. App. 2004) (citing Jacob's test).

 We conclude that the reasoning of Cunningham quoted earlier is irreconcilable
with the Court of Criminal Appeals's holdings and reasoning in more recent cases
such as Hayward and Jacob. Presented with this conflict, we determine that we must
follow the line of authority represented by Hayward and Jacob, rather than that
represented by Cunningham, for the following reasons. First, the Hayward-Jacob
statement of the lesser-included-offense rule better comports with the plain language
of article 37.09, section one: "proof of the same or less than all the facts required to
establish the . . . offense charged." Tex. Code Crim. Proc. Ann. art. 37.09, § 1
(emphasis added). Second, the Hayward-Jacob test better protects the constitutional
"notice" concern that lies at the heart of that test. By being charged with an offense,
a defendant is also put on notice that he may be convicted of any lesser offense
coming within the charged offense's elements that is raised by the facts, even when
the elements of those potential lesser offenses are not recited in the indictment. See
Allison v. State, 618 S.W.2d 763, 764 (Tex. Crim. App. 1981) ("The greater offense,
when properly alleged, necessarily includes all the lesser included offenses whether
each of their constituent elements are alleged in the wording of the indictment on the
greater offense or not."); Day v. State, 532 S.W.2d 302, 313, 315 (Tex. Crim. App.
1975) (op. on reh'g) (indicating that article 37.09 did not differ materially from
predecessor statute in that both versions allowed conviction for lesser offenses even
though elements of lesser offenses were not recited in charging instrument); Aravelo
v. State, 918 S.W.2d 46, 49 (Tex. App.--Houston [1st Dist.] 1996) ("When the State
alleges an offense, it also alleges, albeit implicitly, all lesser offenses included within
that offense. Thus, when the State wants to proceed on a lesser included offense, it
is unnecessary to seek a new indictment."), vacated on other grounds, 947 S.W.2d
887 (Tex. Crim. App. 1997). Article 37.09, section one comports with Due Process
notice because, in requiring that the lesser offense be established by proof of the same
or fewer facts required to establish the charged offense, the section "does not enlarge
upon the [elements of the] offense charged, but . . . restricts [them] . . . as compared
to the offense charged" and, thus, the defendant is immediately put on notice by the
charging instrument of all offenses for which he may possibly be convicted. Jacob,
892 S.W.2d at 907 (citing Day, 532 S.W.2d at 315). 

 Both the Jacob and Cunningham courts relied on Day, (15) but we conclude that
the Jacob court's holding better comports with Day's reasoning as to why article
37.09, section one's lesser-included-offense rule is constitutional. A defendant is
simply not put on notice, consistent with the Due Process or Due Course of Law
clauses, that he may be convicted of an offense that contains an additional
element--like the intent-to-arouse-or-to-gratify-sexual-desire element of the lesser
offense in Cunningham--by a charging instrument that alleges an offense not
including that element or its functional equivalent. That is, that the evidence actually
presented shows the additional element does not suffice to give Due Process notice
retroactively. Moreover, the author of the rehearing opinion in Day, Judge Odom,
clarified shortly after Day what he meant by the dictum on which both the Jacob and
Cunningham courts relied:

 The restrictive effect of the word "required" in Art. 37.09(1) cannot be
ignored. In applying the test one does not examine what the proof
[s]howed in establishing the offense charged; rather one must look to
what facts in the proof were [r]equired to establish the offense charged. 
The broader reading of the statute would render [a]ny offense
incidentally proven in the course of trial a lesser included offense, and
authorize its submission to the jury. Such "lesser included offenses"
under Art. 37.09(1) would include any offense committed near the time
of the offense charged and proven up as "res gestae" of the offense, any
offenses committed near the time of arrest and proven up as "res gestae"
of the arrest, any extraneous offenses proven in rebuttal on an issue
raised by the defense, and any other offense shown incidentally in the
course of the trial, because any such offense would have been
established by what the proof of the offense charged [s]howed, even
though it was not established by the proof of the facts [r]equired to
establish the offense charged. Such a broad reading of Art. 37.09(1) is
impermissible.


Graves v. State, 539 S.W.2d 890, 893 (Tex. Crim. App. 1976) (Odom, J., concurring). 
The Jacob court's statement and application of the lesser-included-offense test better
comports with Day's reasoning and ensures article 37.09, section one's
constitutionality. (16)

 For these reasons, we decline to follow Cunningham.

E. Conclusion Concerning Error

 We hold that the first step of the Rousseau lesser-included-offense test could
not have been met under section one of article 37.09. 

 No other section of article 37.09 allows the lesser charge given here. For
example, the second provision of article 37.09 makes an offense a lesser-included
offense if it differs from the offense charged only in the respect that a less serious
injury or risk of injury to the same person, property, or public interest suffices to
establish its commission. See Tex. Code Crim. Proc. Ann. art. 37.09, § 2 (Vernon
2006). The public interest protected by the statute criminalizing evading arrest or
detention is to encourage suspects to yield to a police show of authority; the
gravamen of the offense is the evasion of an arrest or detention, rather than the
evasion of a police officer. (17) In contrast, the public interest protected by the statute
criminalizing fleeing or attempting to elude a police officer is the safety and orderly
regulation of traffic on Texas highways. (18) Despite the fact that the public interest
protected by the latter offense could be viewed as being different from, (19) and perhaps
less serious than, the public interest protected by the former offense, this is not the
only difference between the two statutes. Thus, section two of article 37.09--which
applies if the only difference between the two offenses is a less serious injury or risk
of injury to the same person, property, or public interest--cannot apply. Likewise,
the third provision of article 37.09--which makes an offense a lesser-included
offense if the only difference between it and the greater offense is a less culpable
mental state--cannot apply because, even assuming without deciding that these
culpable mental states are not functional equivalents and that wilful is a lesser
culpable mental state than intentional, the statutes have other differences. See id. art.
37.09, § 3. The fourth provision of article 37.09--which makes an offense a lesser-included offense if it consists of an attempt to commit the charged offense or an
attempt to commit "an otherwise included offense" of the charged offense--obviously
does not apply here because the offense charged here as a lesser offense was not an
"attempt" offense. See id. art. 37.09, § 4.

 Accordingly, we hold that the trial court erred in charging the jury on the
lesser-included offense.

F. Harm

 Having found error, we apply the harm standard in Almanza v. State, 686
S.W.2d 157, 171 (Tex. Crim. App.1984). Ortiz v. State, 144 S.W.3d 225, 230-31
(Tex. App.--Houston [14th Dist.] 2004, pet. ref'd) (applying Almanza harm standard
to complaint that trial court erred in charging jury on lesser-included offense). 
Although appellant objected to the submission of the lesser-included offense before
the jury was charged, he did not do so on the basis that we have addressed (the first
step of the Rousseau lesser-included-offense test, which he raised for the first time
after trial), arguing instead that no evidence showed commission of only the lesser-included offense (the second step of the Rousseau lesser-included-offense test). 
Accordingly, we review for egregious harm. McKinney v. State, 177 S.W.3d 186, 201
(Tex. App.--Houston [1st Dist.] 2005) (citing Almanza, 686 S.W.2d at 171 and Tex.
Code Crim. Proc. Ann. art. 36.19 (Vernon 2006)), aff'd, Nos. PD-0594-05, PD-0595-05, PD-0596-05, 2006 WL 3302834 (Tex. Crim. App. Nov. 15, 2006). 
Egregious harm occurs when the error "affects 'the very basis of the case,' deprives
the defendant of a 'valuable right,' or 'vitally affect[s] a defensive theory.'" Olivas
v. State, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006) (quoting Hutch v. State, 922
S.W.2d 166, 171 (Tex. Crim. App. 1996) and Almanza, 686 S.W.2d at 172). In this
determination we should generally consider (1) the charge; (2) the state of the
evidence, including contested issues and the weight of the probative evidence; (3)
counsels' arguments; and (4) any other relevant information revealed by the trial
record as a whole. Id.

 In this case, we may stop our consideration at the first factor--the charge
itself--because the harm flowing from the charge was obvious. The jury acquitted
appellant of the charged offense and convicted him of an offense with which the jury
should not have been charged because that offense was not a lesser-included offense. 
Accordingly, we hold that appellant suffered egregious harm from the trial court's
error in submitting the lesser-included-offense charge.

V. Conclusion


 We sustain appellant's third issue to the extent that it concerns whether the
State was entitled to the lesser-included-offense charge under the first step of the
Rousseau lesser-included-offense test. Given our disposition, we need not consider
the remainder of appellant's third issue (concerning whether the State was entitled to
the lesser-included-offense charge under the second step of the Rousseau lesser-included-offense test) or appellant's second issue (concerning the factual sufficiency
of the evidence).

 We reverse the judgment of the trial court and remand the cause with
instructions to dismiss the indictment. (20) See Hampton v. State, 165 S.W.3d 691, 694
(Tex. Crim. App. 2005) (holding that court of appeals's remedy, on remand from
reversal for harmful charge error based on failure to meet second step of Rousseau
lesser-included-offense test, was to remand for "a retrial for [the lesser offense] . . .
because the jury's verdict that the appellant was guilty of the lesser-included offense
. . . operates as an acquittal of the greater offense . . . to which jeopardy had attached. 
This prevents a retrial for the greater offense, but not for the lesser offense.")
(footnotes omitted); Konchar v. State, 938 S.W.2d 500, 502 (Tex. App.--Tyler 1996,
no pet.) (concluding that defendant convicted of lesser-included offense (1) is
implicitly acquitted of greater offense and (2) may be retried for lesser offense only
upon filing of new charging instrument for that offense); Pullin v. State, 827 S.W.2d
1, 2 (Tex. App.--Houston [1st Dist.] 1992, no pet.) (in dictum, noting, "If after
appeal, the conviction for the lesser offense is reversed and a new trial ordered, the
verdict upon the first trial shall be considered an acquittal of the higher offense. The
accused, however, may, upon a second trial, be convicted of the same offense for
which he was previously convicted, or any other inferior thereto.").





 Tim Taft

 Justice


Panel consists of Justices Taft, Keyes, and Hanks.


Justice Keyes, concurring: Justice Keyes joins all of the opinion except for section
IV, subsection D.


Publish. See Tex. R. App. P. 47.2(b).
1. This officer's last name was actually "Roy," not "Roi"; however, we employ
the spelling "Roi" because the parties and the reporter's record do so.
2. Detective Abbondandolo mistakenly thought that he was in radio contact with
Officer Roi. Officer Roi, however, was using a different radio frequency from
that used by the detective.
3. The evidence conflicted as to whether appellant had his flashers on before
Officer Roi's involvement, or whether HPD Executive Assistant Chief Charles
McClelland, whose testimony is discussed further below, told appellant to put
on his flashers after Officer Roi's involvement, as part of McClelland's
instructions to continue to the Travis headquarters.
4. Appellant ran a red light and failed to turn in a mandatory turn lane.
5. McClelland testified that, when he later learned of all of the circumstances
involved, he concluded that the officers on the scene had handled the situation
appropriately.
6. Accord Klapuch v. State, No. 13-05-025-CR, 2005 WL 2899661, at *2 (Tex.
App.--Corpus Christi Nov. 3, 2005, no pet.) (not designated for publication)
(citing Walker; noting that State did not dispute that fleeing or attempting to
elude police officer is lesser-included offense of evading arrest or detention);
Martin v. State, No. 02-04-107-CR, 2005 WL 1926408, at *4 (Tex. App.--Fort
Worth Aug. 11, 2005, no pet.) (not designated for publication) (citing Walker);
Farmer v. State, No. 12-03-00117-CR, 2004 WL 1574267, at *3 (Tex.
App.--Tyler July 14, 2004, no pet.) (not designated for publication) (citing
Walker).
7. See Tex. Code Crim. Proc. Ann. § 37.09, § 1 (Vernon 2006).
8. Appellant actually argues that "the offense of fleeing requires proof of more
facts which are different, not knowing that a police officer is trying to detain
or arrest, [than] to prove the offense of evading detention," which is
confusingly worded. However, liberally construing his argument, and in light
of his discussion at oral argument, we understand appellant to argue the issue
as we have stated it above. See Tex. R. App. P. 38.9.
9. For example, if a penal statute defines more than one way in which an offense
may be committed, a charging instrument alleging that an offense has been
committed in one of those statutory ways may include a particular lesser
offense, whereas an allegation that the offense was committed in another way
might not. Bell v. State, 693 S.W.2d 434, 436 (Tex. Crim. App. 1985).
10. Because it is unnecessary to our disposition, we do not consider whether the
uncharged offense's element that the defendant be signaled audibly or visually
to stop requires the same proof as--and thus is the functional equivalent
of--the element of evading arrest or detention that the defendant know that the
peace officer is trying to arrest or to detain him.
11. For example, appellant could have committed an offense under section 38.04,
as charged here, if Officer Roi had been chasing appellant's car on foot. See
Alejos v. State, 555 S.W.2d 444, 449 (Tex. Crim. App. 1977) (in considering
different issue, noting that section 38.04 does not require peace officer to be
in any type of vehicle).
12. For example, appellant could have committed an offense under section 38.04,
as charged here, if Officer Roi had been in plain clothes while attempting to
detain appellant--as long as appellant knew that Officer Roi was a peace
officer. See Alejos, 555 S.W.2d at 449 (in considering different issue, noting
that section 38.04 does not require that officer be in uniform).
13. For example, appellant could have committed an offense under section 38.04,
as charged here, if Officer Roi had been pursuing appellant in an unmarked
car--as long as appellant knew that his pursuer was a peace officer.
14. The Court of Criminal Appeals has since described language like this in
Campbell as not "as clear as [it] could be" and has interpreted Campbell as
holding--consistent with the Jacob court's holding--that the article 37.09,
section one "factual determination is done by reference to the charged offense,
not by reference only to the facts presented at trial." Jacob, 892 S.W.2d at 909. 
Consistent with that understanding of Campbell, the Jacob court interpreted
the Campbell court properly to have held that, because the State's proof
showed one particular means of committing aggravated robbery (by completed
theft), and because the indictment alleged acts including attempted theft,
completed theft, and immediate flight after either, theft was a lesser-included
offense of aggravated robbery under the indictment and facts in that case. Id.
(explaining Campbell v. State, 571 S.W.2d 161, 162 (Tex. Crim. App. 1978)
).
15. See Jacob, 892 S.W.2d at 907-08; Cunningham v. State, 726 S.W.2d 151, 154
(Tex. Crim. App. 1987).
16. The misapplication and consequent expansion of Day is not unique to
Cunningham. See Ex parte McWilliams, 634 S.W.2d 815, 828 n.13 (Tex.
Crim. App. 1980) (Roberts, J., dissenting on rehearing) (noting that "[t]he
dictum in Day that the statute 'defines lesser included offense in terms of the
facts of the case' has been misinterpreted to mean the evidence in the case. 
Under this misinterpretation, the offense of unlawfully carrying a weapon
could be a lesser included offense of murder if the evidence showed that the
alleged murderer was carrying a weapon. The correct construction of Day (and
of the statute) is that the term 'facts' refers to 'factual elements.' By this
construction, the lesser included offenses in a case can be determined from the
four corners of the indictment, which alleges the 'facts required to establish the
commission of the offense,' as distinguished from mere matters of evidence."),
qualified on other grounds by May v. State, 726 S.W.2d 573 (Tex. Crim. App.
1987).
17. Cf. Jackson v. State, 718 S.W.2d 724, 716 (Tex. Crim. App. 1986) (in dictum,
noting that Court of Appeals had correctly indicated that "[t]he gravamen of
the offense [under section 38.04] is the evasion of an arrest, not the evasion of
a police officer."); Alejos, 555 S.W.2d at 449 (in considering different issue,
noting that section 38.04's intent was "to deter flight from arrest by the threat
of an additional penalty, thus discouraging forceful conflicts between the
police and suspects"); Johnson v. State, 864 S.W.2d 708, 722-23 (Tex.
App.--Dallas 1993) (in discussing different issue, noting that "[t]he Texas
Legislature has made clear its support of the public policy of encouraging
suspects to yield to a police show of authority" and that intent of section
38.04's prohibition of evading arrest and detention is to deter flight from arrest
or detention by threat of additional penalty in order to discourage forceful
conflicts between police and suspects) (quoting Alejos, 555 S.W.2d at 449),
aff'd, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (citing section 38.04 for
proposition that "[t]he state legislature has fostered the policy of encouraging
suspects to yield to a police show of authority.").
18. See Burke v. State, 28 S.W.3d 545, 547 (Tex. Crim. App. 2000) (in dictum,
explaining that Alejos court had indicated that primary focus of predecessor to
section 545.421 was safety and orderly regulation of highway traffic).
19. Cf. Alejos, 555 S.W.2d at 449, 450-51 (in considering different issue, noting
that section 38.04 and predecessor to section 545.421 were "designed to serve
different purposes and objectives" and that they were intended to cover
"different situations").
20. Because the jury convicted appellant of what was submitted as a lesser-included offense, even if it was not actually a lesser-included offense, the jury
implicitly acquitted him of the charged offense of evading detention, and the
State may not reindict appellant for that offense. See Tex. Code Crim. Proc.
Ann. art. 37.14 (Vernon 2006) ("If a defendant, prosecuted for an offense
which includes within it lesser offenses, be convicted of an offense lower than
that for which he is indicted, and a new trial be granted him, or the judgment
be arrested for any cause other than the want of jurisdiction, the verdict upon
the first trial shall be considered an acquittal of the higher offense . . . ."); Pope
v. State, 509 S.W.2d 593, 596 (Tex. Crim. App. 1974) (holding that guilty
verdict in first trial on what was submitted as second lesser-included offense,
despite its not having been lesser-included offense as matter of law, precluded
subsequent prosecution for what had been charged as greater offenses in first
trial).